

1
2
3
4
5
6        IN THE UNITED STATES DISTRICT COURT
7
8        FOR THE NORTHERN DISTRICT OF CALIFORNIA
9
10   BOBO FUIMAONO,                          No. C 06-3580 WHA (PR)
11              Petitioner,                  **ORDER DENYING PETITION**
                                             **FOR WRIT OF HABEAS**
12   v.                                      **CORPUS**
13   S. W. ORNOSKI, Warden,
14              Respondent.
                                    /
15
16        This is a habeas corpus case filed by a state prisoner pursuant to 28 U.S.C. 2254.  The
17   petition is directed to denial of parole.
18        The court ordered respondent to show cause why the writ should not be granted.
19   Respondent has filed an answer and a memorandum of points and authorities in support of it,
20   and has lodged exhibits with the court.  Petitioner has responded with a traverse.  For the
21   reasons set forth below, the petition is **DENIED**.
22                              **STATEMENT**
23        A jury in San Mateo County Superior Court found petitioner guilty of murder in the
24   second degree.  In 1982 he was sentenced to fifteen years to life in prison plus two years.  On
25   March 17, 2004, after a hearing before the Board of Prison Terms ("Board"), during which
26   petitioner was represented and was given an opportunity to be heard, the Board found petitioner
27   unsuitable for parole (Exh. 2 at 65-70).  The Board based its decision upon its conclusion that
28   the offense was especially vicious and brutal, the triviality of the motive for the killing, his
     unstable social history, his failure to profit from previous punishments and probation, his

**United States District Court**
For the Northern District of California

1   previous disciplinary offenses in prison, his insufficient participation in self-help programs, his

2   inadequate parole plans, and opposition from the prosecutor and police department (*ibid.*).

3                                              **DISCUSSION**

4   **A.    STANDARD OF REVIEW**

5           A district court may not grant a petition challenging a state conviction or sentence on the

6   basis of a claim that was reviewed on the merits in state court unless the state court's

7   adjudication of the claim: "(1) resulted in a decision that was contrary to, or involved an

8   unreasonable application of, clearly established Federal law, as determined by the Supreme

9   Court of the United States; or (2) resulted in a decision that was based on an unreasonable

10  determination of the facts in light of the evidence presented in the State court proceeding." 28

11  U.S.C. § 2254(d).  The first prong applies both to questions of law and to mixed questions of

12  law and fact, *Williams (Terry) v. Taylor*, 529 U.S. 362, 407-09 (2000), while the second prong

13  applies to decisions based on factual determinations, *Miller-El v. Cockrell*, 537 U.S. 322, 340

14  (2003).

15          A state court decision is "contrary to" Supreme Court authority, that is, falls under the

16  first clause of § 2254(d)(1), only if "the state court arrives at a conclusion opposite to that

17  reached by [the Supreme] Court on a question of law or if the state court decides a case

18  differently than [the Supreme] Court has on a set of materially indistinguishable facts."

19  *Williams (Terry)*, 529 U.S. at 412-13.  A state court decision is an "unreasonable application of"

20  Supreme Court authority, falls under the second clause of § 2254(d)(1), if it correctly identifies

21  the governing legal principle from the Supreme Court's decisions but "unreasonably applies that

22  principle to the facts of the prisoner's case." *Id.* at 413.  The federal court on habeas review

23  may not issue the writ "simply because that court concludes in its independent judgment that the

24  relevant state-court decision applied clearly established federal law erroneously or incorrectly."

25  *Id.* at 411.  Rather, the application must be "objectively unreasonable" to support granting the

26  writ. *See id.* at 409.

27          "Factual determinations by state courts are presumed correct absent clear and convincing

28  evidence to the contrary." *Miller-El*, 537 U.S. at 340.  This presumption is not altered by the

United States District Court

For the Northern District of California

United States District Court
For the Northern District of California

1  fact that the finding was made by a state court of appeals, rather than by a state trial court.

2  *Sumner v. Mata*, 449 U.S. 539, 546-47 (1981); *Bragg v. Galaza*, 242 F.3d 1082, 1087 (9th Cir.),

3  *amended*, 253 F.3d 1150 (9th Cir. 2001).  A petitioner must present clear and convincing

4  evidence to overcome § 2254(e)(1)'s presumption of correctness; conclusory assertions will not

5  do.  *Id.*

6       Under 28 U.S.C. § 2254(d)(2), a state court decision "based on a factual determination

7  will not be overturned on factual grounds unless objectively unreasonable in light of the

8  evidence presented in the state-court proceeding."  *Miller-El*, 537 U.S. at 340; *see also Torres v.*

9  *Prunty*, 223 F.3d 1103, 1107 (9th Cir. 2000).

10      When there is no reasoned opinion from the highest state court to consider the

11  petitioner's claims, the court looks to the last reasoned opinion. *See Ylst v. Nunnemaker*, 501

12  U.S. 797, 801-06 (1991); *Shackleford v. Hubbard*, 234 F.3d 1072, 1079, n. 2 (9th Cir.2000).

13  **B.   ISSUES PRESENTED**

14      Petitioner contends that (1) his due process rights were violated when the Board failed to

15  set a term and treated the crime as if it were first degree murder; (2) the Board's decision was

16  arbitrary, capricious, and not supported by the evidence; and (3) his due process rights were

17  violated when the Board denied parole based on the circumstances of his crime and on very old

18  disciplinary violations.  Issues two and three are essentially the same, a claim that there was not

19  sufficient evidence to support the denial.  They therefore will be treated together.

20      In opposing the petition, the respondent contends, among other things, that California

21  prisoner have no liberty interest in parole and that if they do, the only due process protections

22  available are a right to be heard and a right to be informed of the basis for the denial – that is,

23  respondent contends there is no due process right to have the result supported by sufficient

24  evidence.

25  **1.   DUE PROCESS**

26      The Fourteenth Amendment provides that no state may "deprive any person of life,

27  liberty, or property, without due process of law." U.S. Const., amend. XIV, § 1.

28  ///

United States District Court
For the Northern District of California

1         a.   **LIBERTY INTEREST**

2      In *Greenholtz v. Inmates of the Nebraska Penal and Correctional Complex*, 442 U.S. 1

3   (1979), the Supreme Court found that the inmates had a liberty interest in discretionary parole

4   that was protected by the Due Process Clause.  The right was created by the "expectancy of

5   release provided in [the Nebraska parole statute.]"  That statute provided that the parole board

6   "shall order" release of eligible inmates unless that release would have certain negative impacts.

7   *Id.* at 11–12.  The Supreme Court returned to the issue in *Board of Pardons v. Allen*, 482 U.S.

8   369 (1987).  There it held that a similar liberty interest was created even though the parole board

9   had great discretion.  *Id.* at 381.  For parole decisions, this mode of analysis survived the

10  Supreme Court's later rejection of it for prison disciplinary decisions in *Sandin v. Conner*, 515

11  U.S. 472 (1995).  *Biggs v. Terhune*, 334 F.3d 910, 914 (9th Cir. 2003) (*Sandin* "does not affect

12  the creation of liberty interests in parole under *Greenholtz* and *Allen*.").

13     While there is "no constitutional or inherent right of a convicted person to be

14  conditionally released before the expiration of a valid sentence," *Greenholtz v. Inmates of*

15  *Nebraska Penal & Corr. Complex*, 442 U.S. 1, 7 (1979), a state's statutory parole scheme, if it

16  uses mandatory language, may create a presumption that parole release will be granted when or

17  unless certain designated findings are made, and thereby give rise to a constitutionally protected

18  liberty interest, *see Board of Pardons v. Allen*, 482 U.S. 369, 376-78 (1987) (Montana parole

19  statute providing that board "shall" release prisoner, subject to certain restrictions, creates due

20  process liberty interest in release on parole); *Greenholtz*, 442 U.S. at 11-12 (Nebraska parole

21  statute providing that board "shall" release prisoner, subject to certain restrictions, creates due

22  process liberty interest in release on parole).  In such a case, a prisoner has liberty interest in

23  parole that cannot be denied without adequate procedural due process protections.  *See Allen*,

24  482 U.S. at 373-81; *Greenholtz*, 442 U.S. at 11-16.

25     Respondent contends that California law does not create a liberty interest in parole.  But

26  California's parole scheme uses mandatory language and is similar to the schemes in *Allen* and

27  *Greenholtz* which the Supreme Court held gave rise to a protected liberty interest in release on

28  parole.  In California, the panel or board "shall set a release date unless it determines that the

United States District Court
For the Northern District of California

1   gravity of the current convicted offense or offenses, or the timing and gravity of current or past

2   convicted offense or offenses, is such that consideration of the public safety requires a more

3   lengthy period of incarceration for this individual, and that a parole date, therefore, cannot be

4   fixed at this meeting." Cal. Penal Code § 3041(b).  Under the clearly established framework of

5   *Allen* and *Greenholtz*, "California's parole scheme gives rise to a cognizable liberty interest in

6   release on parole." *McQuillion v. Duncan*, 306 F.3d 895, 902 (9th Cir. 2002).  The scheme

7   requires that parole release be granted unless the statutorily defined determination (that

8   considerations of public safety forbid it) is made. *Ibid.*; *Biggs v. Terhune*, 334 F.3d 910, 915-16

9   (9th Cir. 2003) (finding initial refusal to set parole date for prisoner with fifteen-to-life sentence

10  implicated prisoner's liberty interest).  In sum, the structure of California's parole scheme --

11  with its mandatory language and substantive predicates – gives rise to a federally protected

12  liberty interest in parole such that an inmate has a federal right to due process in parole

13  proceedings.

14         Respondent relies on *In re Dannenberg*, 34 Cal. 4th 1061 (Cal.), *cert. denied*, 126 S. Ct.

15  92 (2005), as authority for his contention that the California statute does not create a liberty

16  interest in parole.  This argument has been rejected by the United States Court of Appeals for

17  the Ninth Circuit. *See Sass v. California Bd. of Prison Terms*, 461 F.3d 1127-28 (2006).

18         Respondent's argument as to liberty interest is without merit.

19                              **b.    DUE-PROCESS PROTECTIONS**

20         Respondent contends that the only due process protections to which petitioner is entitled

21  are an opportunity to be heard and a statement of the reasons for denial of parole – that it, he

22  contends that there is no due process requirement that the decision be supported by sufficient

23  evidence.

24         The Supreme Court has clearly established that a parole board's decision deprives a

25  prisoner of due process if the board's decision is not supported by "some evidence in the

26  record", or is "otherwise arbitrary." *Irons v. Carey*, 479 F.3d 658, 662 (9th Cir. 2007) (applying

27  "some evidence" standard used for disciplinary hearings as outlined in *Superintendent v. Hill*,

28  472 U.S. 445-455 (1985)); *McQuillion*, 306 F.3d at 904 (same).  The evidence underlying the

5

1  Board's decision must also have "some indicia of reliability." *McQuillion*, 306 F.3d at 904;

2  *Biggs*, 334 F.3d at 915.  The some evidence standard identified in *Hill* is clearly established

3  federal law in the parole context for purposes of § 2254(d).  *See Sass*, 461 F.3d at 1128-1129.

4          Ascertaining whether the some evidence standard is met "does not require examination

5  of the entire record, independent assessment of the credibility of witnesses, or weighing of the

6  evidence.  Instead, the relevant question is whether there is any evidence in the record that could

7  support the conclusion reached by the disciplinary board." *Hill*, 472 U.S. at 455; *Sass*, 461 F.3d

8  at 1128.  The some evidence standard is minimal, and assures that "the record is not so devoid

9  of evidence that the findings of the disciplinary board were without support or otherwise

10  arbitrary." *Sass*, 461 F.3d at 1129 (quoting *Hill*, 472 U.S. at 457).

11          Recent Ninth Circuit cases reflect that a critical issue in parole denial cases is the

12  Board's use of evidence from the commitment offense and prior offenses.  In *Biggs*, the court

13  explained that the some evidence standard may be considered in light of the Board's decisions

14  over time.  *Biggs*, 334 F.3d at 916-917.  The court reasoned that "[t]he Parole Board's decision

15  is one of 'equity' and requires a careful balancing and assessment of the factors considered . . .

16  A continued reliance in the future on an unchanging factor, the circumstance of the offense and

17  conduct prior to imprisonment, runs contrary to the rehabilitative goals espoused by the prison

18  system and could result in a due process violation." *Id.*  Although the *Biggs* court upheld the

19  initial denial of a parole release date based solely on the nature of the crime and the prisoner's

20  conduct before incarceration, the court cautioned that "[o]ver time, however, should Biggs

21  continue to demonstrate exemplary behavior and evidence of rehabilitation, denying him a

22  parole date simply because of the nature of his offense would raise serious questions involving

23  his liberty interest." *Id.* at 916.

24          The *Sass* court criticized the decision in *Biggs*: "Under AEDPA it is not our function to

25  speculate about how future parole hearings could proceed." *Sass*, 461 F.3d at 1129.  *Sass*

26  determined that it is not a due process violation per se if the Board determines parole suitability

27  based solely on the unchanging factors of the commitment offense and prior offenses.  *See id.*

28  (prisoner's commitment offenses in combination with prior offenses amounted to some

United States District Court
For the Northern District of California

1  evidence to support the Board's denial of parole).  However, *Sass* does not dispute the argument

2  in *Biggs* that, over time, a commitment offense may be less probative of a prisoner's current

3  threat to the public safety.

4          In *Irons* the Ninth Circuit emphasized the continuing vitality of *Biggs*, but concluded

5  that relief for Irons was precluded by *Sass*.  *See Irons*, 470 F.3d at 664.  The Ninth Circuit

6  explained that all of the cases in which it previously held that denying parole based solely on the

7  commitment offense comported with due process were ones in which the prisoner had not yet

8  served the minimum years required by the sentence.  *Id.* at 665.  Also, noting that the parole

9  board in *Sass* and *Irons* appeared to give little or no weight to evidence of the prisoner's

10  rehabilitation, the Ninth Circuit stressed its hope that "the Board will come to recognize that in

11  some cases, indefinite detention based solely on an inmate's commitment offense, regardless of

12  the extent of his rehabilitation, will at some point violate due process, given the liberty interest

13  in parole that flows from relevant California statutes." *Id.* (citing *Biggs*, 334 F.3d at 917).  Even

14  so, the Ninth Circuit has not set a standard as to when a complete reliance on unchanging

15  circumstances would amount to a due process violation.

16          **2.      "SOME EVIDENCE" ISSUE**

17          In denying petitioner's state petition, the San Mateo County Superior Court held that

18  after an individualized analysis, the Board gave sufficient reasons on the record for denying

19  petitioner's parole (Exh. 7).  The Board, in denying parole, cited its conclusion that the offense

20  was especially vicious and brutal, the triviality of the motive for the killing, petitioner's unstable

21  social history, his failure to profit from previous punishments and probation, his previous

22  disciplinary offenses in prison, his insufficient participation in self-help programs, his

23  inadequate parole plans, and opposition from the prosecutor and police department (Exh. 2 at

24  65-70).

25          Petitioner had received six serious misconduct reports in prison, the last in 1995, and

26  twenty-one less serious counseling memoranda, the last in 2000 (Exh.2 at 26).  The hearing at

27  issue here was in 2004.  Although the serious disciplinary reports were definitely getting stale

28  by the time of the hearing, they still were at least ten years more recent than the second-degree

7

1    murder offense, and were not yet quite so old as to be disregarded.  Also, petitioner's counselor

2    had prepared a report in which the counselor concluded that petitioner was a "moderate" risk to

3    the public (*id.* at 35-36); this also supported the denial.  Finally, petitioner did not have a firm

4    job offer and his parole plans were a bit shaky (*id.* at 40-41, 53-54).  All these circumstances

5    "tend to indicate unsuitability for parole" under California regulations.  Cal. Code Regs. Title

6    15, § 2402(a), (c)(1)(A).  The Board did not deny parole solely because of the unchanging factor

7    of the nature of petitioner's offense, so the concern expressed in *Biggs*, that after passage of

8    enough time such a factor would cease to be "some evidence," is not triggered here.  There was

9    sufficient evidence to support the denial.  *See Rosas v. Nielsen*, 428 F.3d 1229, 1232–33 (9th

10   Cir. 2005) (facts of the offense and psychiatric reports about the would-be parolee sufficient to

11   support denial).

12       Because there was no constitutional violation, the state courts' denial of this claim was

13   not contrary to, or an unreasonable application of, clearly established Supreme Court authority.

14       **2.    FAILURE TO SET TERM**

15       Petitioner also contends that his due process rights were violated by the Board's failure

16   to set a specific term of years and its purported treatment of his offense as if it were first-degree

17   murder.

18       Under state law a prisoner does not have a right to have the Board set a specific term

19   until he or she is found to be suitable for parole, something which has not yet happened for

20   petitioner.  *See Dannenberg*, 34 Cal. 4th at 1071.  This does not, of course, control whether due

21   process requires such a term-setting, but petitioner has not pointed to any such federal

22   requirement and the Court has not found any.  This claim is without merit.

23       Petitioner contends that by denying him parole the Board is treating him as if he had

24   been convicted of first-degree murder, rather than second-degree.  Although plaintiff contends

25   he is being punished as if he had pleaded to first-degree murder, he in fact is receiving the

26   parole considerations to which his fifteen-to-life sentence entitles him.  This claim is without

27   merit.

28   ///

8

The state courts' rejection of petitioner's arguments on this issue was not contrary to, or an unreasonable application of, clearly established Supreme Court authority.

**CONCLUSION**

The petition for a writ of habeas corpus is **DENIED**.  The clerk shall close the file.

**IT IS SO ORDERED.**

Dated:  October _____, 2007.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE

G:\PRO-SE\WHA\HC.06\FUIMAONO580.RUL.wpd

9

UNITED STATES DISTRICT COURT

FOR THE

NORTHERN DISTRICT OF CALIFORNIA

BOBO FUIMAONO,

              Plaintiff,

   v.

S W ORNOSKI et al,

              Defendant.

_____ /

Case Number: CV06-03580 WHA

**CERTIFICATE OF SERVICE**

I, the undersigned, hereby certify that I am an employee in the Office of the Clerk, U.S. District Court, Northern District of California.

That on October 2, 2007, I SERVED a true and correct copy(ies) of the attached, by placing said copy(ies) in a postage paid envelope addressed to the person(s) hereinafter listed, by depositing said envelope in the U.S. Mail, or by placing said copy(ies) into an inter-office delivery receptacle located in the Clerk's office.

Bobo Fuimaono
C-49301/ 3N35L
San Quentin State Prison
San Quentin, CA 94974

Elizabeth S. Kim
State Attorney General's Office
455 Golden Gate Avenue
Suite 11000
San Francisco, CA 94102-7004

Dated: October 2, 2007

Richard W. Wieking, Clerk
By: Jennifer Ottolini, Deputy Clerk